IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 1:12-CR-71 |
| v. | § | |
| | § | |
| MARIO CARDENAS-GUILLEN | § | |

### FACTUAL BASIS AND STIPULATION

The United States of America, presents to the Court, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by the defendant, **Mario Cardenas-Guillen** and the defendant's attorney **Reynaldo G. Garza, III**, and presents this factual basis and stipulation in support of the defendant's plea of guilty to Count One of the indictment, and in support thereof, would show the following:

1. That the defendant hereby stipulates and agrees to the truth of all matters set forth in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the indictment, which charges a violation of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute 5 kilograms or more of a schedule II controlled substance, namely cocaine HCL.

2. That the defendant, who is pleading guilty to such indictment, is one and the same person charged in the indictment.

3. That the events described in the indictment occurred in the Eastern District of

Factual Basis and Stipulation – Page 1

Texas and elsewhere.

4. That had this matter proceeded to trial, the government, through the testimony of witnesses, including expert witnesses, and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the indictment; specifically, the government would have proven the following stipulated facts:

   a. **Mario Cardenas-Guillen** is the brother of Osiel Cardenas-Guillen and Antonio Ezequiel Cardenas-Guillen, a/k/a "Tony Tormenta". Osiel Cardenas-Guillen is the former leader of the Cartel del Golfo (C.D.G.). The C.D.G is a large drug trafficking organization based in the border area of Tamaulipas, Mexico, that conspired to import into the United States and distribute in Houston, Texas, the Southeast Texas area within the Eastern District of Texas, and elsewhere in the United States more than 1,000 kilograms of cocaine HCL. Osiel Cardenas Guillen served in a C.D.G. supervisory capacity until his arrest in March 2003 and extradition to the United States of America in January 2007. Antonio Ezequiel Cardenas-Guillen took a leadership role in the C.D.G. upon the arrest of Osiel Cardenas Guillen, and so served until he was killed by the Mexican Navy (SEMAR) in Matamoros during an arrest operation in November 2010.

   b. **Mario Cardenas-Guillen** has been associated with C.D.G. drug trafficking activities since its inception. **Mario Cardenas-Guillen's** C.D.G. related activities included the large-scale importation of cocaine HCL from the "Valley" area of southern Texas to the Houston, Texas area.

   c. During the investigation, law enforcement agents received information from Lorenzo Espinosa (Espinosa) and Edward Longoria (Longoria), who were both involved with **Mario Cardenas-Guillen** in drug trafficking activities with the C.D.G. Espinosa and Longoria were Houston, Texas, distributors of cocaine HCL provided to them by **Mario Cardenas-Guillen** and the C.D.G. Espinosa told law enforcement agents that, between approximately 2006 and 2010, he made regular trips to from Houston, Texas, to various locations in Mexico to meet with **Mario Cardenas-Guillen** or his agents for the purpose of securing multi-kilograms shipments of cocaine HCL.

d. Once these shipments were received from **Mario Cardenas-Guillen**, Espinosa and Longoria distributed the cocaine HCL to their own customers. Multi-kilogram loads of cocaine HCL were then transported by a variety of means, to include, commercial trucks, to customers both inside and outside the state of Texas, including through and into the Eastern District of Texas.

e. On October 4, 2006, law enforcement agents lawfully stopped a truck in Nacogdoches, Texas, that was transporting one such load of cocaine HCL supplied by **Mario Cardenas-Guillen**. The agents lawfully searched the truck and found forty-eight (48) kilograms of cocaine HCL (as was later confirmed by laboratory analysis) hidden in the vehicle.

f. On June 27, 2009, law enforcement agents were summoned to the scene of a double homicide at an apartment in Philadelphia, Pennsylvania. There they discovered the bodies of two distributors of cocaine HCL supplied by **Mario Cardenas-Guillen** via Espinosa and Longoria. Both victims had been shot by assailants attempting to steal drugs and money from them. Four kilograms of cocaine HCL (as determined by laboratory testing) that were part of a shipment of sixteen (16) kilograms were found in the victims' apartment. $111,403.00, generated by the sale of cocaine HCL, was also found in the apartment.

g. On June 26, 2010, a court authorized wire-tap interception led law enforcement to conduct surveillance on a courier working under the direction of Espinosa and Longoria. A subsequent traffic stop was conducted in Beaumont, Texas of a semi-tractor truck driver who was observed receiving a package from that courier. A subsequent lawful search of that truck revealed twenty-eight (28) kilograms of cocaine HCL. Further investigation revealed that fourteen (14) of those kilograms of cocaine HCL (as confirmed by laboratory analysis) had been provided to Espinosa and Longoria via **Mario Cardenas-Guillen's** DTO.

h. All told, from some point in the year 2000 continuing through June 20, 2012, **Mario Cardenas-Guillen** knowingly and intentionally combined, conspired, confederated and agreed with others to distribute and possess with the intent to distribute more than 5 kilograms of cocaine HCL. **Mario Cardenas-Guillen** was an organizer or leader of a criminal activity that involved five or more participants.

DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

5.     I have read this factual basis and stipulation and the indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and stipulation and agree without reservation that the United States can prove each of these acts and that it accurately describes the events about my acts and the events as recited as I know them.

Dated: 12/2/22

MARIO CÁRDENAS-GUILLEN
Defendant

## DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

6. I have read this factual basis and stipulation and the indictment and have reviewed them with my client, **Mario Cardenas-Guillen**. Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: 12/2/22

_____
REYNALDO G. GARZA, III
Attorney for the Defendant

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____
CHRISTOPHER RAPP
Assistant United States Attorney
Eastern District of Texas
350 Magnolia, Suite 150
Beaumont, Texas 77701
(409) 839-2538
(409) 839-2550 Fax
Arizona Bar No. 025704